and that's number 251448. All right, first we will hear from Mr. Studemeier on behalf of American Acceptance. In 1972, in Fuentes v. Shevin, the Supreme Court observed that for more than a century, the central meaning of procedural due process had been clear. Parties whose rights are affected are entitled to be heard, and in order to enjoy that right, they must first receive notice. Twenty-seven years later, in City of West Covina v. Perkins, the Supreme Court held that when law enforcement seizes property as evidence in a criminal investigation, law enforcement must take reasonable steps to give notice that the seizures have occurred so that parties with interest in that property might pursue its return. Twenty-three years after that, the appellees seized two motorcycles in which my client holds recorded security interests. The appellees took no steps to inform my client that the seizures had occurred. The appellees took no steps to give my client an opportunity to be heard. Even worse, the appellees threatened my client with sanctions simply for seeking an opportunity to be heard. Our case is simple. We ask for nothing more than what is already required by the Supreme Court's holdings in Fuentes v. Perkins. In the District Court's order granting the appellees motion to dismiss for failure to state a claim, the District Court held that as secured creditors, yes, we were entitled to notice and an opportunity to be heard following the seizures. They held, on page two of the order, that no, we were not provided with notice of the seizures. They never held that we were provided an opportunity to be heard. Counselor, I want to go back to Perkins because I know you rely on it. But in Perkins, it concerned due process after the state no longer has a lawful right to retain the property. And so isn't that what puts this in a different position here? Because this was an ongoing criminal investigation and prosecution? Your Honor, in Perkins, the notice was given at the time of seizure. It was a search warrant inventory, correct? In Perkins, yes, Your Honor. And that's usually given to the person whom the property is seized from, not necessarily the person who has a third-party interest in the property. Yes, Your Honor. So isn't that different? Well, in our case, one item was seized pursuant to warrant, and one item was seized pursuant to an exception to the warrant requirement. But the timing of the seizure there, I think, is important. The holding in Perkins is that law enforcement must take reasonable steps to give notice. And their reasonable steps are considered leaving the inventory, the warrant. But to whom did they leave the inventory? That's the thing. Because we're talking here about a third-party interest in the property, as opposed to the person or individual who also has a property right as well, but it's also the individual from whom the property was seized. Yes, Your Honor. And in Perkins, the seizure occurred at the home of a family with whom the defendant was, sorry, in that case, was living. So I'm not sure that the police knew whose property they had on that search warrant. I don't think they knew if it was the person from whom they were actually seeking the property or if it was the family. Well, they would have been looking for something in particular because it would have been the bike who the person that they were investigating for the murder was driving. And so there would be a basis to know that that was his bike that he was driving. Yes, Your Honor. But the reason that the notice must be given is so that an opportunity to be heard may be had. And the opportunity to be heard, as the court in Fuentes states, is merely provided to prevent mistaken or substantively unfair deprivations. But Fuentes also says unless there's these exceptions, unless there's some valid governmental interest, and I'm sure counsel on the other side is going to say that the valid governmental interest is that they're investigating a murder and motorcycles that were involved in a murder. And so why would that not be a valid governmental interest under Fuentes? Your Honor, if I understand your question. I guess what I'm saying is that there's a valid governmental interest here, right? Yes, Your Honor. You're citing Fuentes, but you didn't say the second part, except in extraordinary circumstances if there's a valid governmental interest, which it appears that there was a governmental interest, a valid governmental interest here in retaining the motorcycles. Yes, Your Honor, but retaining without notice that the seizure had occurred, I don't believe that's what Fuentes stands for. I think the opportunity to be heard is just to ensure that there's no mistaken or substantively unfair deprivation. So, of course, law enforcement is entitled to deference. Of course, law enforcement must be given the tools that they need to conduct criminal investigations. But I don't believe that Fuentes or Perkins gives law enforcement carte blanche without some informed neutral evaluator to retain property as evidence for the duration of a criminal investigation. So why don't we get rid of this case under qualified immunity inasmuch as there's no clearly established rule that I can find that says exactly when you have to give you notice when the criminal proceedings are completed. And so you sue these officers individually, some of these people individually, why doesn't qualified immunity get rid of it? Or if that's not good enough, how about transunion or the informational injury, which you claim you didn't get notice? In order to recover under that transunion theory, you would have to have suffered some injury. So, first of all, how about the qualified immunity argument? Second, if that doesn't work in transunion, what's your damage? You got the motorcycles back. Your Honor, we don't have the motorcycles back at this point. But you could go get them any time you want. You got them. You got constructive control over those motorcycles. All you got to do is go ahead and get them. And we're not aware if the motorcycles are operable, but yes, Your Honor. Well, that doesn't count as an equation. Surely, the battery might be dead. You've been sitting around for however long waiting on this case. Yes, Your Honor. They don't have to deliver it to you in perfect shape. They just have to deliver it to you the way they got it. So, first on the qualified immunity issue. Qualified immunity, I don't believe, protects here law enforcement simply because... You sued under 1983. Yes, because we believe it's their suit or practice to refuse to tell any party that they have their property until they've deemed it no longer necessary for criminal investigation. But what is the clearly established law that says when they have to do that? Well, and we believe that comes from Perkins. It says that law enforcement must take reasonable steps to provide notice. Reasonable steps necessarily incorporate some analysis of timing. That the right steps at the wrong time are no longer reasonable. So, how long have you been aware that you could go get these motorcycles anytime you wanted? We were offered the motorcycles, I believe, in the... I don't remember with certainty, Your Honor.  October of last year. Something like that. So, two years following seizure. Two years? Yes, sir. And you filed a suit in 25. Oh, this appeal was filed in... Where was your suit filed? Our suit was filed in 2023. This suit, but you also had a suit in state court. Yes, Your Honor. We initially filed suit in state court for claim and delivery. We were simply seeking some way to get an opportunity to be heard. And we thought that was the most apt mechanism. And so that was due process, right? That we... That suit. That we initiated a lawsuit for claim and delivery. That was your opportunity to be heard on that, correct? Well, I don't believe that counts as an opportunity to be heard because we were never heard on the merits of law enforcement retaining the property. The court didn't have to reach that question. The court held that law enforcement... Pardon me, Your Honor. Got a little flustered up here. No, but the claim and delivery... The claim and delivery initially before the state court was dismissed would leave a refile because you all served... Because the statute says you have to serve the attorney general and you served the sheriff's department. And then you all refiled the claim and delivery, added a 1983 claim. And... And then that's when it was removed to federal court. Yes, Your Honor. Yes, we were content for this to be a state law claim. We think this is something that should have been handled in South Carolina because if this seizure had occurred 90 miles north, there's a clear statutory process for the sort of claim we're making. And North Carolina general statute 15-11... Who removed this to federal court? The appellee has removed this to federal court. I'm assuming that's because of the 1983 action. Yes, Your Honor. So to go back to that North Carolina statute, South Carolina doesn't have anything analogous to Rule 41G of the Federal Rules of Criminal Procedure. We don't have any way to seek the return of property seized as evidence. We don't have anything analogous to North Carolina general statute 15-11.1a. And I believe we're the only state in the Fourth Circuit that doesn't have some mechanism to allow parties with interest in property to seek its return. The other states in the Fourth Circuit allow a judge to weigh in. Or just an informed neutral evaluator. And that's all we sought. That's all we're seeking with this is some mechanism to know where our property in which we have interest is during a criminal investigation and ask us if its retention is necessary. And at present, it doesn't appear that there is one in South Carolina. And it appears South Carolina has been aware of this since at least 1998 when our attorney general signed on to a brief in Perkins stating that, yes, when law enforcement seizes property as evidence, they must take reasonable steps to give notice that the seizure has occurred. And so, since we're here on a motion to dismiss for failure to state a claim, I would just submit to the court that if you take four or five of the factual allegations in the complaint as true, we should have survived a motion to dismiss for failure to state a claim under the standards set forth in Perkins and Fuentes. We allege that we had a recorded security interest in these two motorcycles. The recording of the security interest is an issue of fact. We pled that the seizures began October 8, 2022. We pled that there was no contact between ourselves and the appellees until December 20, 2022. And we pled that we initiated contact. And under those circumstances, it doesn't appear that law enforcement took reasonable steps to inform us of the seizure, of either seizure. Notice and an opportunity to be heard. After you spend another six months, nine months, a year litigating this thing, what is it you want? Your Honor, I'm out of time, but may I answer your question? Yes, sir. What we want is a rule set forth for South Carolina that says law enforcement cannot wait indefinitely to give notice that a seizure has occurred. We want there to be some upper boundary of reasonableness. And we have one set forth in 5635, where persons with interest in property seized as abandoned, they're required to be given notice by law enforcement, owners and lien holders, within 25 days of seizure. That's all we want for the state of South Carolina to do for people with interest in property seized as evidence. Just give notice within a reasonable time so that people with interest in property seized as evidence aren't left to wonder where it's gone. You want us to write a law for the state of South Carolina to do this? No, Your Honor. We just want what other states in the Fourth Circuit have and what the court in Perkins appeared to state, that some reasonable steps must be taken to give notice. Well, there again, I'm beginning to sound like Judge Wilkinson. Isn't that something the South Carolina legislature ought to do instead of us? Well, if the Supreme Court has spoken on the necessity for reasonable steps, then it appears the Supreme Court has spoken, and thus it's left open to individual law enforcement officials in South Carolina to try and apply this rule in the absence of guidance from the Supreme Court. There's no requirement for a statute or regulation to satisfy due process. But in the absence of one, I think situations like ours are bound to emerge. The problem is that Perkins is, I don't even know if you can, it's not analogous to this case. I mean, Perkins was, this is a third party. Perkins, there was notice. And I think the issue there was in Perkins was not only how much notice and what details of the notice were required, because notice was given in Perkins. There was this question of, did they have to inform them of the statutory rights as to how to get the property back? And so that was, I just don't see Perkins being on point to this case. And so Perkins, and in Frientes, it says that they can do this if there's some valid, extraordinary governmental interest. And here we have a murder. Your Honor. Yeah, you can continue. In Perkins, there was a murder as well. And yes, Perkins didn't have to address whether or not notice was given because all the parties agreed that notice was given. But we had to track them down. We had to use social media posts to figure out that arrest of the debtor had occurred and that the sister of the decedent contacted us to let us know that they took one of the motorcycles at some point. We had to track them down to ask if they still had it. So I think there is a similarity with Perkins in that notice is primary, that notice has to be given. Reasonable steps to give notice have to be taken. Thank you. Any other questions? No. Thank you. Yes, sir. Mr. Plot. Thank you, Your Honors, and may it please the Court. Daniel Plowler, I'm here on behalf of the appellees. Excuse me. Yeah, the appellees. This is a Fourth Amendment case and not a Fourteenth Amendment case, and I think that's why some of the confusion and questions that are coming from the bench and that we're all trying to wrestle with here is happening because the appellants in this case want to make this a Fourteenth Amendment case, and it's simply not. I'd point you no further than your own precedent in Travel Peace, Smith v. Travel Peace, where this Court relied on the concurrence opinion in Perkins that was issued by Judge Thomas where they found that the Fourth Amendment was tailored explicitly for criminal justice system, has always been thought to define the process that is due for seizures of person or property in criminal cases, and that's exactly what we have here. This case is completely different than the situations in Fuentes, which was a Raplevin case, if I remember correctly, or the abandoned property sort of situation that my friends on the other side referenced to you. The reason is the state interest in those type of cases is different. When we're dealing with a criminal case, as we were dealing with in the fact pattern before you, the state's interest is in preserving evidence to investigate crime and prosecute a crime. And in that situation, the Fourth Amendment has always been where this Court should turn to see what process is due to anyone. Furthermore, in the West Covina case or Perkins case, as it's been called today, the Court was wrestling with what happens after that need has expired. What happens when the property is no longer needed for an investigation or prosecution? And that's why Perkins is distinguishable from this case, but it also helps elicit a response that the Fourth Amendment was complied with in our case, and the Fourth Amendment is the process that's due. And, again, I point you no further than Travel Peace, which this Court decided in 2022 that reached that same conclusion. There's dicta in Covina or the Perkins case, and that's not my terminology. That's actually Justice Thomas' terminology in his concurrence opinion in the Perkins case, and it seems that he was worried exactly about the situation that we're discussing here today. He was concerned that people would take the dicta in the majority opinion in Perkins and claim that you now have to give notice to anybody that might have a property interest anytime you execute a search warrant or an arrest warrant. And that simply would go against centuries of established precedent and process in the criminal justice system. It would also attempt to overlay the Fourteenth Amendment onto the Fourth Amendment, which is something no court, well at least no precedential court has ever held as necessary. So with it accepted that this is a Fourth Amendment case, it's easy to affirm Judge Lewis' decision, because her decision to dismiss this case, the last part of her opinion, excuse me, is that because the Fourth Amendment was complied with, there is no due process violation in this matter. I would like to talk a little bit about notice to the point the court's wrestling or grappling with that issue in this case. I'd also start with Perkins. Perkins talks in terms of notice was provided to the owner, or that notice is usually left at the area, the location where the property was seized. That did happen in this case. Notice is also, to the extent it applies in a Fourth Amendment situation, has never been required to be actual notice. It can be constructive notice. So in this situation, the appellants did receive constructive notice. One, through the sister of Mr. Brock, who is the victim in the murder case. And then two, through the arrest warrant and the seizure of the property for Mr., and I always butcher his name, but Andrew Juski, who was the suspect in the murder. That was a search warrant that was issued. A return in compliance with South Carolina law was provided to the judge that issued the search warrant, inventorying that the motorcycle was collected. Through that notice, the debtors to their contracts, their creditor contracts, were able to, would have been able to alert them of the fact that this is where the property is. I think it's also important to notice, and I'll point you to the Rogers case that we cite in our brief. That would be Rogers versus Knight, which is an Eighth Circuit opinion, but it talks about this exact issue. That it's always been held that law enforcement can take property, seize it, and hold it for criminal investigations and prosecutions. That's what happened here. You have the Sarrio versus Baltimore case, which is a District of Maryland case, that I think delves into the issue that we're dealing with here, which is at some point in time, there may be a 14th Amendment issue, a due process issue that comes up after the property is no longer needed for investigation or arrest, or excuse me, prosecution of the criminal charges. When that happens, there may be due process claims and due process issues that would trigger. But in this fact pattern that you're dealing with, you don't have to grapple with that because as soon as the prosecutor let the Lexington County Sheriff's Department know that these motorcycles were no longer needed for their investigation or for the prosecution, the Lexington County Sheriff's Department immediately notified the appellants and told them, please come get the motorcycles. You claim that you have the possessory interest in them at this point. Please come get them. In fact, since October of 2024, so now 12 calendar months, we've been imploring them to come get their property that they claim they want. Last point that I'd like to make, unless there's any questions from the bench, we removed this case to federal court only after they brought 1983 claims against our clients. We had a right to do so. The federal claims have been dismissed, but their claimant delivery action was remanded to state court and remains pending. So due process, not only have they already gotten some form of process, it's still ongoing, and if they, I don't know why we're having to do this, because we're offering the property back, but if they feel like they need to have a court order us to give them the property back, they have a remedy for that in state court still to this day. And Judge Floyd, I would like to touch on your qualified immunity comment, because I believe you're absolutely right. And I'd point you no further than the Moore versus County of Delaware case, which is a Second Circuit case that was decided after Kremstock, which you may have seen from some of the briefing or pleadings in this case. And in the Moore case, they actually granted qualified immunity on almost the exact same situation, speaking in terms of the dicta that's present in the Perkins case and how it didn't require the notice that that particular party was seeking in a Fourth Amendment context like you're dealing with here. So let me ask you this. If we are in agreement with you, and of course I don't know how it's going to come out, but the simple way, from your point of view, is to just affirm Judge Lewis. Yes, Your Honor. You don't need any further 1983 qualified immunity attention given to it by this court. And I don't think this fact pattern is the right fact pattern to grapple with that issue if you think you need to. I think the simplest thing is affirm Judge Lewis because she's right. This was a Fourth Amendment issue, and the Fourth Amendment was complied with. And when the Fourth Amendment is complied with, that's all the process that's due. See this court's precedent in travel peace. Thank you. Any other questions? Thank you. Yes, sir, Mrs. Studemeyer. Briefly, Your Honor. This is not a Fourth Amendment case, and this court's holding in Smith v. Travel Peace establishes that. If you look at footnote six or seven of this court's opinion in Smith v. Travel Peace, the court cites to a case, probably from 1870, somewhere in that range, saying that seizure is an act, not an ongoing process, that we concede, as we must, of course, that a lawful seizure occurred in this case. The Fourth Amendment was complied with, but satisfaction of the Fourth Amendment is not satisfaction of our 14th Amendment rights. Secondly, my colleague brought up Crimstock. There are three Crimstock cases out of the Second Circuit that have delved into this issue extensively. Crimstock III in 2006 is analogous to this case. It is specifically about when property is seized as evidence in a criminal investigation, and the court in the Second Circuit in that case held that, yes, whenever property is seized as evidence, there must be some form of hearing on the retention of that property as evidence. Crimstock II was on forfeiture, property seized for forfeiture, and the court held no, no additional hearing needs to be held there, but when property is seized as evidence, yes, there does need to be some sort of hearing. Well, I think that Crimstock says when there's a warrantless arrest, because this was an arrest of these people, and because I think it goes on and talks about the need for the vehicle, personal need for the vehicle, which is not the issue here because we're dealing with a third party, but I think it says warrantless arrest, and one of the motorcycles, there was a warrant for the motorcycle, and so it wasn't a warrantless, similar to that case in the Second Circuit. Yes, Your Honor, and one was warrantless, one was done with a warrant, and we can see it as we must, that we have less of an interest in the property than someone who uses it daily for transportation. We're a secured creditor. We're not normally in possession of the collateral, but we do have some interest, and Fuentes establishes that whenever there's any significant property interest, something less than undisputed ownership, due process is implicated, so I think the holding in Crimstock 3 is analogous here, and to judge Floyd's earlier question on what do we really want, one of the other issues is the depreciation of the motorcycles, that we have two interests in the property. We have contractual right to repayment of the debt that's owed by the debtor, and we have a property interest in the property in the event of default. Well, our position is that in the gap between when the motorcycles were seized after some reasonable period, and then when we are finally given an opportunity to be heard by a neutral fact finder on their retention, the motorcycles are depreciating, and we have not been afforded process. How in the world are you going to get that out of the government? How in the world are you going to collect appreciation from the government? How does the government owe you appreciation for your motorcycles? It's unlawfully seized. We don't dispute the lawfulness of the seizure. What we dispute is the lawfulness of the retention until we're told about it and have an opportunity to be heard. We are not entitled to any notice prior to seizure. We're not entitled to notice at the time of seizure. We understand that things have to be inventoried, that a return has to be made on a warrant within 10 days. We think that there is some reasonable time after seizure where beyond that, if notice is not given, then it's unreasonable to hold property that's depreciating, rusting, that's having weeds grow up between its spokes and suffer that kind of injury. Well, I don't know. I think with the United States versus 8,850, the Supreme Court said 18 months is not a reasonable delay. Yes, Your Honor. And we're at 24 months, right? And I'm not familiar with that case specifically. My analysis of reasonableness was based on analogous South Carolina statute, but I take the Court's word for it on that Supreme Court case. If there are no further questions from the Court, then we rest on our brief. All right. Thank you. All right, we'll step down and shake your hands. And if you all can come up and shake Judge Floyd's hand.
judges: DeAndrea Gist Benjamin, Henry F. Floyd, Patricia Tolliver Giles